UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

**MARK XAVIER WALLACE**

        Petitioner,

v.                       ACTION NO. 4:12cv170
                        [ORIGINAL CRIMINAL NO. 4:10cr116]

**UNITED STATES OF AMERICA,**

        Respondent.

## MEMORANDUM FINAL ORDER

This matter comes before the court for the sole purpose of resolving Ground One of the Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence ("Motion"), filed on November 5, 2012 (ECF No. 65), together with an accompanying Memorandum in Support. The Motion claimed several grounds for relief. In Ground One, the Petitioner argued that his former counsel failed to communicate the terms of a plea offer extended by the United States in the underlying criminal case.

After denying all other claims in the Motion, the court held Ground One in abeyance pending expansion of the record. The court held an evidentiary hearing on July 30, 2013, and the matter is now ripe for final disposition. For the reasons set forth below, the court **DENIES** the Motion in its entirety.

## I. BACKGROUND

The extensive factual and procedural history of this case is detailed in the Memorandum Order of January 30, 2013 (ECF No. 68), and the Opinion and Final Order of April 4, 2013 (ECF No. 71) (hereinafter "April 4 Opinion"). Although the April 4 Opinion was captioned as a "Final Order," shortly after its entry, the court received sworn documents from the Petitioner directly contradicting the affidavit filed by his former attorney, Assistant Federal Public Defender Keith L. Kimball. The competing affidavits of the Petitioner and Mr. Kimball created a disputed issue of fact relevant to the ineffective assistance of counsel claim. Specifically, the parties disputed whether Mr. Kimball discussed with the Petitioner the option of pleading guilty, without a cooperation agreement, to the sole count of the Indictment, which charged him with unlawful possession of a firearm by a felon, in order to obtain a three-point reduction in his offense level for acceptance of responsibility under the advisory sentencing guidelines. That option represented the substance, and extent, of the United States' plea offer, extended by fax on November 19, 2010.

The court issued an Order on May 15, 2013 (ECF No. 75), holding in abeyance the judgment (ECF No. 72) entered pursuant to the court's April 4 Opinion, appointed attorney Harry Harmon to represent the Petitioner in this limited inquiry, and

2

convened an evidentiary hearing on July 30, 2013. Mr. Kimball attended the hearing at the direction by the court, as did attorney Michael Morchower, who represented the Petitioner at trial in December 2010, after the Petitioner discharged Mr. Kimball.

## II. LEGAL STANDARDS

To prove ineffective assistance of counsel, a petitioner must show by a preponderance of the evidence that 1) his attorney's performance was deficient, and 2) the attorney's deficient performance prejudiced the petitioner by undermining the reliability of the judgment against him. See Strickland v. Washington, 466 U.S. 668, 687 (1984). Because a petitioner must satisfy both prongs of the ineffective assistance test, a failure to carry the burden of proof as to one prong precludes relief and relieves the court of the duty to consider the other. Id. at 700.

To show deficient performance, counsel's actions or omissions must be measured against what "an objectively reasonable attorney would have done under the circumstances existing at the time of the representation." Savino v. Murray, 82 F.3d 593, 599 (4th Cir. 1996); see also Lawrence v. Branker, 517 F.3d 700, 708-09 (4th Cir. 2008). The court must attempt to "eliminate the distorting effects of hindsight," and instead "indulge a strong presumption that counsel's challenged conduct

falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. The right to effective assistance of counsel includes the duty of counsel to communicate formal plea offers from the prosecution. See Missouri v. Frye, 132 S.Ct. 1399 (2012) (holding that defense counsel has the duty to communicate formal offers from the prosecution); see also Lafler v. Cooper, 132 S.Ct. 1376 (2012).

To demonstrate prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In doing so, he "must demonstrate that the error worked to his 'actual and substantial disadvantage,' not merely that the error created a 'possibility of prejudice.'" Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997) (quoting Murray v. Carrier, 477 U.S. 478, 494 (1986)). In the plea context, petitioners "must demonstrate a reasonable probability that they would have accepted the earlier plea offer had they been afforded effective assistance of counsel [and] a reasonable probability that the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it." Frye, 132 S. Ct. at 1409.

### III. EVIDENCE AND ANALYSIS

The Petitioner and Mr. Kimball both testified at the evidentiary hearing. Neither party called any other witnesses

4

nor introduced any documentary evidence. Although Mr. Morchower was present at the hearing, he was not called to testify.

For purposes of completing the record, the court directed the parties to produce a copy of a November 15, 2010, email exchange between Mr. Kimball and Assistant United States Attorney Howard Zlotnick, which Mr. Kimball referenced in his affidavit. On August 5, 2013, Mr. Zlotnick delivered a copy of that email to the court and to Mr. Harmon, who did not object to its inclusion in the record. The email was so entered on August 13, 2013. See (ECF No. 79).

## A. Arguments Presented

The Petitioner advanced two primary lines of argument. First, he argued that he was unaware of the United States' written plea offer of November 19, 2010, and that Mr. Kimball never explained the option, described in the offer, of pleading guilty at an early stage of the proceedings in order to obtain a three-point reduction for acceptance of responsibility. Second, the Petitioner claimed that he did not want to proceed to trial and, consequently, would have accepted any plea offer the United States extended, but that Mr. Kimball prevented him from doing so. As a corollary to this second claim, the Petitioner argued, at great length, that Mr. Kimball's strategy somehow turned on the disposition of a separate burglary charge pending in state court in Virginia Beach.

Mr. Kimball disputes this account. He testified that, in accordance with his routine procedure in all criminal matters, he explained all of the various options at one of his initial meetings with the Petitioner, including the option of pleading guilty either with or without a cooperation agreement.[1] Because the circumstances of the case made any plea agreement unlikely, Mr. Kimball continued to prepare for trial, until the Petitioner replaced him with Mr. Morchower.[2]

### B. Credibility Determinations and Findings of Fact

The court convened the evidentiary hearing to evaluate the credibility of these competing narratives. See, e.g., Raines v. United States, 423 F.2d 526 (4th Cir. 1970). The court set forth a detailed recitation of the facts in the April 4 Opinion. See Op. at 5-9. For the reasons below, the court finds Mr. Kimball's

---

[1] Mr. Kimball is a highly experienced criminal defense attorney. He is currently assigned as the supervisor of the Federal Public Defender's (FPD) Office in Norfolk, Virginia. He has been an Assistant Federal Public Defender for seven years. Between 1994 and the beginning of his service with the FPD, Mr. Kimball practiced in this court as a private criminal defense attorney. Kimball Hr'g Test.

[2] Mr. Kimball did not claim that he delivered a copy of the November 19, 2010, fax to the Petitioner. In fact, he conceded that he probably did not do so, in part because he "took his foot off the gas" once the Petitioner retained Mr. Morchower as trial counsel on November 22, 2010. Kimball Hr'g Test. This particular oversight does not warrant collateral relief, as Mr. Kimball had already reviewed this plea option with the Petitioner; the Petitioner had already told Mr. Kimball that he was not interested in such a plea and wanted to go to trial; and the Petitioner specifically retained Mr. Morchower to try the case. See infra note 7.

testimony to be the credible evidence before the court, and, accordingly, declines to revisit the facts found in the April 4 Opinion. In particular, the court finds both that Mr. Kimball timely explained all relevant options to the Petitioner, and that the Petitioner rejected the option of pleading guilty and knew of the availability of the three-point reduction for acceptance of responsibility. Based on the credible testimony of Mr. Kimball and the non-credible testimony of the Petitioner, the court supplements the facts of the April 4 Opinion with the following additional findings and conclusions.

### (1) Mr. Kimball Explained the Options

Mr. Kimball was not the first defense lawyer to interact with the Petitioner. Assistant Public Defender Phoenix A. Harris represented the Petitioner at his detention hearing on October 22, 2010, and his arraignment on October 27, 2010. See (ECF Nos. 8 & 10). Mr. Kimball, however, retained primary responsibility for the case and met with the Petitioner at the Western Tidewater Regional Jail on October 26, 2010, and November 12, 2010. See Kimball Aff. at 1 (ECF No. 70).

According to Mr. Kimball's testimony and sworn affidavit, in one of his first two meetings with the Petitioner, Mr. Kimball explained three issues to the Petitioner: (1) the elements of the offense; (2) the option to plead guilty, either with or without a cooperation agreement; and (3) various

7

sentencing issues, including the advisory guideline range, the statutory maximum, and the availability of a three-point reduction in the offense level for acceptance of responsibility, if a plea were entered before the United States expended resources preparing for trial. See id.; see also Kimball Hr'g Test. This explanation comported with Mr. Kimball's usual practice.[3]

Mr. Kimball explained these options to the Petitioner even though he believed Ms. Harris had probably gone through the same explanation. Kimball Hr'g Test. Ms. Harris did not testify at the hearing, so the court has no basis to decide whether she did, in fact, explain these same issues to the Petitioner. However, Mr. Kimball's testimony does indicate that he took great efforts to discuss thoroughly all of the Petitioner's options, even if it meant repetition. Id. The court finds that Mr. Kimball informed the Petitioner about the option to plead guilty, without a cooperation agreement, and further informed the Petitioner that, if the Petitioner entered a guilty plea early enough, he could reasonably expect the United States to move for the third point for acceptance of responsibility under U.S.S.G. § 3E1.1(b).

---

[3] See supra note 1 and accompanying text.

### (2) The Petitioner Rejected a Guilty Plea

Neither an open guilty plea nor a negotiated guilty plea was forthcoming in this case. Although Mr. Kimball explained that the option of an "open" guilty plea (i.e., a plea with no corresponding written agreement) was always available, he advised the Petitioner against it. Kimball Hr'g Test. Mr. Kimball's advice was tactically sound: during his meetings with Mr. Kimball, the Petitioner denied that he possessed the firearm in question.[4] Possession was the only element in dispute on the single charge in the Indictment of being a felon in possession of a firearm. Accordingly, Mr. Kimball reasonably concluded that there was a possibility of acquittal at trial, such that an open guilty plea was inadvisable.

Regarding the possibility of a negotiated guilty plea, Mr. Kimball's experience with this court and with the United States Attorney led him to conclude--correctly--that negotiations would

---

[4] The Petitioner continued in this denial at trial, when he testified before the jury. See infra notes 5 and 6. At the July 30, 2013, hearing, however, the Petitioner conceded, on direct examination, that he did possess the firearm. Wallace Hr'g Test. Moreover, he admitted that the statements he made at trial, under oath, denying possession constituted intentional perjury. Id. Nevertheless, he continued to challenge the sufficiency of the evidence on the issue of possession both on direct appeal, see United States v. Wallace, 480 F. App'x 739 (4th Cir. 2012), and on collateral review, when he complained that Mr. Kimball's failure to interview exculpatory witnesses represented ineffective assistance of counsel. See Reply at 2 (ECF No. 69). Although the Petitioner had the right to pursue these arguments, he did so at the expense of any credible claim that he ever truly accepted responsibility for his actions.

9

be futile. As stated above, the Indictment contained only one count of unlawful possession of a firearm by a felon, so there was no opportunity to negotiate for dismissal of any other charges. Indeed, Assistant United States Attorney Howard Zlotnick confirmed in an email to Mr. Kimball on November 15, 2010, that there was "[n]ot much we can do for this guy. He can plead to the [I]ndictment but that is about all." See (ECF No. 79). Moreover, no other form of plea agreement was feasible. This court disfavors pleas under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, which bind the court upon agreement of the parties that a particular sentence or range applies. Consequently, Mr. Kimball continued to prepare for trial.

As to whether the Petitioner would have simply pled guilty to the Indictment, the testimony of the Petitioner and Mr. Kimball appears to diverge. Mr. Kimball testified that the Petitioner never instructed him to pursue a guilty plea. The Petitioner, on the other hand, insisted that he wanted to plead guilty, but was thwarted by Mr. Kimball's "unprofessional" course of representation. See Rebuttal at 2 (ECF No. 73-1).

This apparent conflict, however, is resolved by a closer examination of the Petitioner's expectations regarding a guilty plea. When pressed by the court during his testimony at the hearing on July 30, 2013, the Petitioner admitted that he simply

"wanted leniency." Wallace Hr'g Test.[5] In other words, the Petitioner wanted a plea bargain, as that term is used in common vernacular, despite the fact that he had no leverage with which to bargain. The Petitioner had no interest in entering an open guilty plea, and Mr. Kimball reasonably concluded that the Petitioner agreed with the decision to go forward with trial.

The Petitioner testified on cross-examination that Mr. Kimball never informed him about the United States Sentencing Guidelines, the point system contained therein, or the available reduction for acceptance of responsibility; and that he went to trial only because he thought he had no other choice. Wallace Hr'g Test.[6] The court does not believe Mr. Wallace. Based on Mr.

---

[5] At this point in the hearing, the Petitioner told the court, under oath, that he was "just being honest, straight up." Although the Petitioner was ostensibly honest about his desire for leniency, he quickly reverted to dishonesty. In this same exchange with the court, the Petitioner blamed his trial counsel, Mr. Morchower, for instructing him to lie under oath at trial. Wallace Hr'g Test. Shortly after the Petitioner leveled these scurrilous allegations, counsel for both parties stipulated that Mr. Morchower did not suborn perjury at trial.

[6] During another colloquy with the court at the July 30, 2013, hearing, the Petitioner repeatedly protested that he was unfamiliar with the federal criminal justice system. He relied on that unfamiliarity both to explain his decision to go to trial and to justify his perjury at trial, claiming that he did not understand the purpose or effect of an oath. The Petitioner's lengthy criminal history belies his claim. By December 2010, the Petitioner was a seasoned offender with extensive experience in various courts. By feigning ignorance of the fundamental principle of an oath to tell the truth, the Petitioner seriously undermined his own credibility.

Kimball's credible testimony and his years of experience handling criminal matters in this court, it defies belief to conclude that he never discussed those fundamental issues with the Petitioner.[7] Instead, the evidence indicates that the Petitioner simply did not believe a "straight-up" plea to the charge with a three-level offense reduction for acceptance of responsibility to be a satisfactory "bargain." The court finds that the Petitioner knowingly and voluntarily rejected that option in favor of a jury trial.

### (3) The Virginia Beach Case Is Irrelevant

At the July 30, 2013, hearing, the Petitioner placed a perplexing amount of emphasis on Mr. Kimball's actions vis-à-vis a separate burglary case pending in state court in Virginia Beach ("the Virginia Beach case"), in which the Petitioner was represented by attorney James O. Broccoletti. See PSR ¶ 35. According to the Petitioner, Mr. Kimball refused to consider a plea in the instant federal case, unless and until Mr. Broccoletti succeeded in postponing the Virginia Beach case, which was scheduled for December 6, 2010. Wallace Hr'g Test. In his testimony, the Petitioner stated that Mr. Kimball urged the Petitioner not to take a plea "because of" the pending Virginia Beach case. Id. In effect, the Petitioner accused Mr. Kimball of

---

[7] The key here is not the conveyance of the November 19, 2010, letter itself, but of the option described therein. See Op. at 12, 15, Apr. 4, 2013 (ECF No. 71); supra note 2.

12

dithering in the federal case, causing the Petitioner to suffer prejudice once the United States' faxed offer expired.

The Petitioner's argument, in addition to lacking credibility, misses the point. To be sure, Mr. Kimball had an interest in ensuring that the Virginia Beach case was not adjudicated before a federal sentence was imposed, in order to minimize the Petitioner's criminal history for federal sentencing purposes. Kimball Hr'g Test. But that incentive was present whether the Petitioner pled guilty in late November or was found guilty after a jury trial in mid-December.

On cross-examination, Mr. Kimball stated that, based on his experience, he foresaw little difficulty in delaying the Virginia Beach case until after federal proceedings were complete. Even if the Virginia Beach case could not be delayed, however, there was no realistic chance that federal <u>sentencing</u> would be complete before December 6, 2010. <u>See, e.g.</u>, Fed. R. Crim. P. 32(e)(2) (requiring "at least 35 days" between distribution of the presentence report and the sentencing hearing). The Petitioner's decision to go to trial rather than to plead guilty extended his federal case by, at most, one month. Whether he pled guilty or was found guilty after trial, he would have been in precisely the same position with respect

13

to his federal sentencing if the Virginia Beach case had gone forward as scheduled.[8]

Moreover, Mr. Kimball stated during his testimony that he could not even recall the precise status of the Virginia Beach case, indicating that it played no major role in his decision-making process. Kimball Hr'g Test. In sum, there is no evidence or logical reason that the timing of the Virginia Beach case would, or did, influence Mr. Kimball's advice about the advantages and disadvantages of a guilty plea.

## IV. CONCLUSIONS

Having found that Mr. Kimball explained the substance of the United States' plea offer, and that the Petitioner declined to plead guilty under its terms, the court concludes that the Petitioner has demonstrated no probability whatsoever, let alone a "reasonable probability," that he would have chosen to accept the plea offer. See Frye, 132 S. Ct. at 1409. Accordingly, the Petitioner has not met his burden of demonstrating prejudice, and his failure to do so precludes relief on a claim of ineffective assistance of counsel. Id.; see also Strickland, 466 U.S. at 700. Also, the court finds no deficient performance by Mr. Kimball that falls below an objective standard of

---

[8] Of course, if the Petitioner had been found not guilty in this court, there would have been no federal sentencing proceedings. The Petitioner gambled with a trial and committed perjury in order to improve his chances of an acquittal. See supra Part III.B.2.

14

reasonableness "under the circumstances existing at the time of the representation." Savino, 82 F.3d at 599; see Strickland, 466 U.S. at 689.

For the reasons stated herein, and for the reasons stated in the Memorandum Order of January 30, 2013, and the Opinion of April 4, 2013, the § 2255 Motion is **DENIED** in its entirety, and the judgment entered pursuant to the Opinion and Final Order of April 4, 2013, is **REINSTATED** effective the date of entry of this Memorandum Final Order. The Petitioner is **ADVISED** that he may file an appeal as to any of the claims in the Motion by forwarding a written notice of appeal to the Clerk of the United States District Court, 2400 West Avenue, Newport News, Virginia, 23607. The written notice of appeal must be filed within sixty (60) days of the date of entry of this Memorandum Final Order. The court declines to issue a certificate of appealability for the reasons stated herein and in the Orders identified above.

The Clerk is **DIRECTED** to forward a copy of this Memorandum Final Order to the Petitioner and to his counsel, Harry Harmon; to Keith Kimball; to Michael Morchower; and to the United States Attorney at Newport News.

It is so **ORDERED**.

/s/
Rebecca Beach Smith
Chief
United States District Judge

REBECCA BEACH SMITH
CHIEF UNITED STATES DISTRICT JUDGE

August 21, 2013

15